May it please the Court, I'm Joel Hoxie. I represent the appellant VT Leeboy, Inc. I am hoping to reserve perhaps one minute for rebuttal. Be kind enough to bear that in mind. The key points I would like to address in the short time available are these. First, the arbitration provision at Issue 11.1 of the party's agreement is under the case law that we have cited, known as a very broad and comprehensive provision. Number two, Balar, in its answering brief at page four and in footnote three, concedes that it did agree to arbitrate certain claims, but takes the position that it did not agree to arbitrate this particular claim. But whether the parties agreed to arbitrate this dispute is decided upon a well-developed body of Federal substantive law of arbitrability. And under those well-settled precepts, a dispute is arbitrable unless it can be said with positive assurance that the arbitration provision is not susceptible to any interpretation that covers the dispute. The second point that you just made. The second point about Balar conceding. Well, that basically this is a question of which claims are subject to arbitration. No. In the court below, and I think you can ascertain this from Judge Carroll's order, which is excerpt of Record No. 11 at page 6, the argument below was that Section 11.1 was amended, in quotes, out of contract by the parties, and therefore Section 12 trumps Section 11.1. This notion that Balar is now taking the position that it does agree that certain disputes are arbitrable first came up in their answering brief. Didn't the court, though, in its motion, in its denial of the motion to reconsider, say the plain, make finally a ruling, said the plain language of the agreement indicates that the Arizona Dealer Act claim is not arbitratable? It did say that, and that's what the statute does provide at ARS 44-6708. It can be read to ban any mandatory arbitration. So your position, then, is that that is an issue that typically would be left to the arbitrator in any event? Yes, because now you're into the heart of the merits, and under Republic of Nicaragua and other cases, the courts, when deciding arbitrability, are to stay clear of the merits. This whole dispute would not have started if D.T. is a without cause termination, which the Arizona Dealer Act prohibits, so. Would, you know, most of the cases we have which are construing an arbitration clause are doing it in juxtaposition to a choice of law clause. Yes. As opposed to an incorporation of State law under this more, you know, broad clause that you have here. What's the closest case, in your view, to the situation we have here? I think here, Section 12 is very much substantively akin to a choice of law provision. Now, it is true that this particular contract did also include a choice of law, a very generic choice of law provision. That's found in the next section, Section 13, which is not discussed in the briefs. But if you do look at that agreement, you'll find that in there. So I think the SOVAC case, that the parties can agree that State law rules that are inconsistent with the Federal Arbitration Act can be inserted in the parties' contract that they make for themselves, but there has to be specific reference and that they incorporate these State laws in there. And as we point out in our briefs, Section 12 is very generic. It doesn't make any reference to the Arizona Dealers Act, and it doesn't make any reference to Arizona. It simply is a contract designed to be used throughout the United States. So it starts out by saying some States, and then it has a contingent if your State. And so it's not clear at all that that it even applies here, which goes to the merits which we think the arbitration panel has to wrestle with and ultimately determine. Now, if you were in a State which had a statute that would apply, that was applicable, would that, because you're saying the Arizona Dealers Act is not applicable here, but say you were in a State where they had an applicable statute that said, okay, Minnesota, no arbitration. This is the statute. Would you agree that Section 12 then amended Section 11 so that in Minnesota there would be a claim could be brought under that Minnesota Act that was not arbitrable? I'm not familiar with the Minnesota statute, but let's assume that it's language that's antagonistic to arbitration or to venues outside the State. Then I think you're now into a Master Bruono and a Chiron situation where the Federal Law under the FAA would only look to the substantive law, but as to those provisions of the statute that try to allocate powers between courts and arbitrators would be preempted by Federal law. So would you make the same argument? Let me just, so then that case you would say that you might look to the Minnesota Dealer Act, but not to the non-arbitration provisions of it because that would be preempted by the FAA. But I guess getting back to the contract, because what AT&T Technologies tells us to do is look first at the contract and then see if it's ambiguous, would you make the same argument that the relationship between Section 11 and Section 12 is ambiguous and so therefore we need to find, in favor of arbitrability, putting aside the question as to whether FAA preempts the Minnesota arbitration provision? Yes. And the district court so agreed. The district court in its order found that the argument that Baylor was positing that the parties intended Section 12 to eviscerate Section 11.1, he found that to be improbable. But the district court got off on the wrong analytical path to begin with because in looking at this as a motion to dismiss, he brought in this whole body of jurisprudence under Rule 12b-6, dismissal for failure to state a claim, which is not in the moving papers at all. And he looked at the then recently decided Twombly case and found that I think it's impossible and therefore he felt he was compelled to keep the case in court and couldn't dismiss it. How did he get from improbable on that first ruling to the plain language requires in the second ruling? Yeah. It's unclear to me how he got there. It seems to me the focus of his second ruling was more on Rule 59 law and jurisprudence than on arbitration law. And he points out that even if I'm wrong, I don't have to grant Rule 59 relief. The breadth of 11.1 easily covers the dispute at hand because it talks about arising out of, relating to, or in connection with, which the case law we cite is as broad an issue. And because there are doubts and disagreements as to how the contract is to be interpreted and we spend some time in both our opening and in our reply brief on what the current state of Arizona contract interpretation law is under Taylor v. State Farm. There clearly are doubts as to how the parties intended to square Section 12 with Section 11. And it's the, and those doubts that under the FAA body of substantive law of arbitrability mandate that the case goes to arbitration. Do you want to save the remaining time? I do. Thank you. May it please the Court, Mark Sampson here for Baylor. I think one thing in answer to one of the judge's questions, how did he get there? I think without pride, it's reproduced on page 7. If you look at what Section 12 says the parties' contract is, then when Judge Carroll was just reading the original briefs and decided to say it was improbable but plausible under Twombly, he didn't see it. Our answering brief, page 7, you set it out. What they did in Section 12, and for factual history for the bench, I know you guys go through so many things. If you're a dealer, you are at the end of a string that there's always a scissor sitting over, which is the person who you hold the dealership for. That's why dealership acts exist in all the states. If you're the dealer, you darn know well what that Section 12 means. And the idea that this wasn't in anybody's thinking and that this act doesn't apply, where they chose to have this, if you look at our complaint, which is in the excerpts of record, there's four paragraphs outlining factually, in link with Twombly, why it is that the equipment we get from B.T. Leboy falls squarely within the Arizona Act. Well, moving away from the merits question, I guess, is your key argument now that the language of the agreement is not ambiguous, so that it's clear that Section 12 modifies Section 11 to omit from arbitration issues that fall under a dealer's act? Correct. And not just now, Your Honor. That was the argument. I think you had asked the question, was this argued below? That's never changed. That's how we always saw this, that the parties decided for this one class of event. And if you read Judge Carroll's order in the excerpts, that's how he came out. That's why he says it doesn't eviscerate Section 11. Section 11 is there for fighting about a shipping price or a shipment that didn't show up. Those are arbitrable disputes. When it goes to this one, the parties' intent in the contract, because if any term varies, it's their language, judges, any term varies, then the agreement itself is amended to the fullest extent necessary to give you your State's dealer protection right. That's how it works. Let me ask you, why wouldn't you just said, well, if it was this question, then it wouldn't be a problem and it would be arbitrable. But if it's this question, why wouldn't that go to the arbitrator, as it usually does, to sort out what is and isn't arbitrable? First of all, Your Honor, for purposes of this case, and that is the argument that they raised only in their reply brief, I thought you were asking that question of Mr. Hoxie. This Court has a long history. If you don't put it in your opening brief clearly and concisely, it's not before you. They never raised it with Judge Carroll. He raised it kind of elliptically, didn't he? Judge Carroll? In one of his orders? I don't believe so, Your Honor, because if you go through what they decided to do and why that train has now left the station for them is they went in and asked him, you decided, Judge. They didn't say, hold it, Judge, stay this, because the arbitrability of this particular issue under Section 12 needs to be decided by the arbitrator. That's certainly something that could have been done but wasn't. That's why when I saw that argument in the reply brief, I believe a site for your court is Byrd v. Or U.S. v. Byrd, 359 F. 3rd, 1185 at 1189, which says it can't be, if it's not raised in front of the district court, it can't be raised here. And then secondly, Byrd again repeats it and also Greenwood v. the FAA, the airplane people, not the Arbitration Act, 28 F. 3rd, 971 at 977, quote, we review only issues which are argued specifically and distinctly in a party's opening brief. Is it clear that the Dealer's Protection Act applies to the dispute in question? Your Honor, that will be something that they will have a motion on, we will have evidence on, but it's not ripe certainly at this stage of the appellate process because that will be a factual determination that didn't get reached. The only way it would be reached in this is, again, if you look at our complaint, there's about four paragraphs that spell out, I saw in the reply that we sell heavy construction equipment, we don't qualify, we don't this and that. We made the factual allegations that show that, in fact, we are covered by the Act. In our complaint, Judge Carroll correctly looked at those, said, I find the Act applies for this early stage of the process. So let me just, on your last point, because there's, you know, there's a couple of options here, and that is Judge Carroll was absolutely right, so things just move on that way. Another option seems to me to be, given the precedence of arbitration and the presumption for arbitration, that this is read as governing potentially substantive law but not the procedural law in terms of arbitrability. And if that were the case and we ruled that way, then basically this claim would be subject to arbitration, and you wouldn't be able to argue against that in arbitration. The third option is the one we just talked about, which is, well, maybe the arbitrator should determine what is subject to arbitration, in which case your client would still have a remaining argument that it might be subject to arbitration. But I understand your argument, you're saying, well, you can't go there now, but as between the last two, I assume you'd like the last one rather than the middle one, right? I always like to be wounded rather than killed, that you're right about. But I don't believe that that is the issue. It's a side issue about, I think they did lose their chance to have to make that argument about arbitrability, but the substantive bottom line argument is... But, you see, the problem I have is that this is not really a Twombly case. I mean, that's not normally how... I mean, I kind of read this, and I was like, I felt like I was in the wrong horn book or something, you know what I'm saying? It's like, well, it's not really a Twombly case. So what do we do with that? I think, Your Honor, what we do with this and the harmonizing explanation of what's in play here is that the defendant chose to have Judge Carroll decide arbitration, and that required interpretation. The only FAA principle involved here is people have to arbitrate those things that they agree to arbitrate. They don't arbitrate those things they don't agree. That's the fundamental tenet that we all agree with. And he interpreted this Arizona contract, which he's been doing for 30-odd years, and he found that the plain, unambiguous meaning, as we put in our answering brief, is that issues with the arbitrate, the Dealer Protection Act, are not part of the arbitration clause of this contract because the parties took them out. But that wasn't his decision on the 12b-6, on ruling on what he deemed to be a 12b-6 motion. I mean, there he said essentially it was ambiguous and he thought it was unlikely that the parties intended to eviscerate Section 11. So why don't we have to just send it back to the district court and say you applied the wrong standard, apply the correct standard, and do it over again? Because they filed the motion for reconsideration. And in that decision, I think he reached, as one of you had pointed out, a much stronger opinion of what the facts of the contract really said. But was he there applying the correct standard? Certainly. Did he know that where there's ambiguity, there's a presumption in favor of arbitrability? Was that? Mr. Hodgson did not miss the opportunity to inform him of that. It's all through their papers. He talks about it. And he comes to a much stronger conclusion in the motion to reconsider. All right. Thank you. Thank you, Your Honor. Do you have a minute for rebuttal? The key point, again, is the any doubt standard under AT&T. I'm sorry, I didn't hear you. Just wait just a moment. She's got to get the clock straight. So we'll just wait just a moment. All right. You may begin. The key point is the what? The key point, again, is the any doubt standard under Mitsubishi and Comedy Club, which follows on AT&T. And I think the Court's determination of improbability as to Baylor's argument, the juxtaposition between Section 12 and Section 11, coupled with their concession in their answering brief that 11.1 remains in the contract. It just doesn't cover this dispute. When you combine that with the extreme breadth of 11.1 under the Federal Law of Substantive Arbitrability, there's clearly a doubt, and that doubt has to be resolved in favor of arbitration. It's not a Twombly case, as Your Honor posited, so plausibility has nothing to do with the arbitrability issue that was before the Court. Unless the Court has any other questions, the relief we are requesting is twofold. One, that the judgment below be vacated, and two, that there be a remand with instructions for the district court to either dismiss the complaint or stay the case pending completion of arbitration. All right. Thank you. Thank both counsel for your arguments and your briefing on this. And the Baylor v. Leboy is submitted.
judges: Trott, McKeown, Ikuta